UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| ANNA LAUGHLIN, <br><br> Plaintiff, <br> v. <br><br> BRETT SHOOP, MID ATLANTIC MEDICAL, LLC D/B/A BIOMET MID ATLANTIC, BIOMET, INC., BIOMET ORTHOPEDICS, LLC, BIOMET MANUFACTURING CORP., and BIOMET US RECONSTRUCTION, LLC <br><br> Defendants. | Case No. _____ |

## NOTICE OF REMOVAL

Defendants Biomet, Inc., Biomet Orthopedics, LLC, Biomet Manufacturing, LLC (f/k/a Biomet Manufacturing Corporation) and Biomet U.S. Reconstruction, LLC (collectively "Biomet Defendants") through undersigned counsel, hereby remove the state-court action entitled, *Anna Laughlin v. Brett Shoop, et al.* filed in the Circuit Court for Calvert County. Removal is warranted under 28 U.S.C. §1141(b) because the Court has original jurisdiction over this action under 28 U.S.C. §1332.

In support of removal, removing defendant states as follows:

1.  On or about April 10, 2014, Plaintiff commenced this action against the Biomet Defendants and Brett Shoop and Mid Atlantic Medical, LLC (collectively, "Mid Atlantic") by filing a complaint in the Circuit Court for Calvert City, in the State of Maryland, bearing case number C14-423. (*See* Complaint, a copy of which is attached as Exhibit 1.)

2. In this action, Plaintiff alleges that she suffered various injuries as a result of being implanted with a M2A-Magnum Hip Replacement System ("Biomet Device"). (*See* Compl., Ex. 1 at ¶¶ 109-114.) Plaintiff further alleges that the Biomet Device she received was manufactured and sold by Biomet Defendants and distributed and sold by Mid Atlantic. (*See Id.* at ¶¶ 11).

3. As set forth more fully below, this case is properly removed to this Court pursuant to 28 U.S.C. §1441 because the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332, and removing defendant has satisfied the procedural requirements for removal.

4. This is one of numerous cases that plaintiffs have filed in both federal and state courts across the country involving the M2a-Magnum™ Hip Replacement System. On October, 2, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order pursuant to 28 U.S.C. § 1407 directing that then-pending M2a-Magnum™ cases be transferred and coordinated for pretrial proceedings in the United States District Court for the Northern District of Indiana, before the Honorable Robert L. Miller, Jr. *See* Transfer Order, *In re: Biomet M2a Magnum Hip Implant Prods. Liab. Litig. ("In re: Biomet M2a")*, 896 F. Supp. 2d 1339 (J.P.M.L. 2012). This Court recently stayed a case involving similar allegations against the same defendants concluding that "allowing the MDL court to resolve [issues related to fraudulent joinder of distributors] would be efficient and avoid the possibility of conflicting decisions." *Davis v. Biomet Orthopedics, LLC, et al.*, No. 1:12-cv-03738-JKB (D. Md. Feb. 22, 2013) (attached hereto as Exhibit 4). *But see Harris v. Biomet*, No. 12-cv-00575-GLR (D. Md. July 25, 2012) (remanding a Biomet case involving similar allegations that was filed and removed *prior to the JPML's coordination* of the *In re: Biomet M2a* Multidistrict Litigation). The Biomet Defendants intend to seek the transfer of this action to that Multidistrict Litigation, *In re: Biomet M2a Magnum Hip Implant Products Liability Litigation*, MDL No. 2391, and shortly will provide the

JPML with notice of this action pursuant to the procedure for "tag-along" actions set forth in the rules of the JPML

I. **REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.**

5. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different States.

A. **Complete Diversity Of Citizenship**

6. Plaintiff alleges in her Complaint that she is a citizen of the State of Maryland. (*See* Compl., Ex. 1 at ¶ 4.)

7. Biomet, Inc. is, and was at the time Plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana. It is thus a citizen of the State of Indiana for purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

8. Biomet Orthopedics, LLC is, and was at the time Plaintiff commenced this action, an Indiana limited liability company organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana. A limited liability company's citizenship is determined by the citizenship of its members. *JBG/JER Shady Grove, LLC v. Eastman Kodak Co.*, 127 F. Supp. 2d 700, 701 (D. Md. 2001). The sole member of Biomet Orthopedics, LLC is Biomet U.S. Reconstruction, LLC, an Indiana limited liability company. The sole member of Biomet U.S. Reconstruction, LLC is Biomet, Inc. Biomet, Inc. is and has been at all relevant times, a corporation organized under the laws of the State of Indiana, with its principal place of business in Indiana. 28 U.S.C. § 1332(c)(1). Thus, as its members are citizens of Indiana, Biomet Orthopedics, LLC is a citizen of Indiana.

9.     Defendant Biomet U.S. Reconstruction, LLC is, and was at the time Plaintiffs commenced this action, a limited liability company organized under the laws of the State of Indiana, with its principal place of business located in Warsaw, Indiana. A limited liability company's citizenship is determined by the citizenship of its members. *Shady Grove*, 127 F. Supp. 2d at 701. The sole member of Biomet U.S. Reconstruction, LLC is Biomet, Inc. Biomet, Inc. is, and has been at all relevant times, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana. Thus, as its members are citizens of Indiana, Biomet U.S. Reconstruction, LLC is a citizen of Indiana for the purposes of determining diversity.

10.    Biomet Manufacturing Corporation was formerly a corporation organized under the laws of Indiana, with its principal place of business located in Warsaw, Indiana. Biomet Manufacturing Corporation, therefore, was a citizen of Indiana for the purposes of determining diversity. *See* 28 U.S.C. § 1332(c)(1). On June 3, 2013, Biomet Manufacturing Corporation was converted to a limited liability company and is now known as Biomet Manufacturing, LLC. A limited liability company is a citizen of any state of which a member of the company is a citizen. *Shady Grove*, 127 F. Supp. 2d at 701. The sole member of Biomet Manufacturing, LLC is Biomet, Inc. Biomet, Inc. is, and has been at all relevant times, a corporation organized under the laws of the state of Indiana, with its principal place of business located in Warsaw, Indiana. Thus, as its members are citizens of Indiana, Biomet Manufacturing, LLC is a citizen of Indiana.

11.    Plaintiff alleges in her Complaint that Mid Atlantic is a Maryland corporation and was at all times relevant herein, duly registered and licensed to do business in the State of Maryland. (*See* Compl., Ex. 1 at ¶ 7.) Plaintiff also alleges in her Complaint that Defendant Brett Shoop is the Owner/President of Mid Atlantic. (*See* Compl., Ex. 1 at ¶ 6.)

4

12. There is complete diversity between Plaintiff and the Biomet Defendants.

13. Although Defendants Mid Atlantic and Brett Shoop are alleged to be residents of Maryland, they are fraudulently-joined defendants, whose citizenship must be disregarded by the Court. *See Coots v. Allstate Life Ins. Co.*, 313 F. Supp. 2d 539, 541 (D. Md. 2004) (fraudulent-joinder "doctrine allows the district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction") (internal quotations omitted). Pursuant to the fraudulent-joinder doctrine, a court should disregard the citizenship of an in-state defendant where, as here, "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 719-720 (D. Md. 2000) (citation and internal quotation marks omitted).

14. In this case, there is no possibility that Plaintiff can establish a cause of action against Mid Atlantic because her claims against Mid Atlantic are categorically barred and because she does not offer any factual basis for her negligence, strict liability, consumer fraud, or misrepresentation claims against Mid Atlantic. *See, e.g., Stafford EMS, Inc. v. J.B. Hunt Transp., Inc.*, 376 F. Appx. 317, 320 (4th Cir. 2010) (affirming district court's finding that an in-state defendant was fraudulently joined where "clear case law" demonstrated that the plaintiff's claims against the defendant were categorically barred); *Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999) (finding in-state defendant fraudulently joined where the plaintiff failed to allege enough facts sufficient to meet pleading requirements).

**(1)  The Mid Atlantic Defendants Are Fraudulently Joined.**

15. There is no possibility that liability could be imposed on the Mid Atlantic Defendants in this case for several independent reasons.

16. As a mere distributor of the Magnum device at issue here, Mid Atlantic bears no potential liability to Plaintiff. Mid Atlantic never owned or took title to the Biomet Device. (*See* Declaration of Brett Shoop ("Shoop Declaration"), Ex. 2 at ¶ 5) Rather a Mid Atlantic simply delivers the specific products requested by the hospital for use in a given surgery. Biomet submits an invoice to the hospital directly and the hospital pays Biomet directly. (*See* Shoop Declaration, Ex. 2 at ¶ 7) Mid Atlantic does not open or in any way alter, inspect, or examine the packaging, the products, or the labeling. Typically, the unopened box is handed directly to the nurse in the same packaging in which it was shipped by Biomet. (*See* Shoop Declaration, Ex. 2 at ¶¶ 9-12).

17. Further, the Mid Atlantic Defendants has no involvement in the development or drafting of the written materials for the Biomet Device (or any other Biomet product), including the warnings. Similarly, Mid Atlantic has never made any representations regarding the Biomet Device to any physician. As such, Mid Atlantic has no reason to believe and no personal knowledge that the written materials are in any way incorrect, misleading, or inadequate. (*See* Shoop Declaration, Ex. 2 at ¶¶ 13-14)

18. Simply put, Mid Atlantic had no involvement with the design, manufacture, testing, labeling, or packaging of the Biomet Device at issue in this case.

19. Plaintiff nonetheless alleges a number of claims against Mid Atlantic, including: (1) negligence; (2) negligent failure to warn; (3) strict liability failure to warn; (4) strict liability; (5) violation of the Maryland Consumer Protection Act ("MCPA") and (6) misrepresentation. (*See* Compl., Ex. 1 at ¶¶ 117-169.) None of these causes of action is sufficient to defeat removal because there is no

possibility that liability could be imposed on Mid Atlantic for any of them. Where a plaintiff was "unable at the time [she] formulated [her] complaint to set forth any specific factual allegations against the [resident] defendants upon which could be based any claim," "there can be no better admission of fraudulent joinder." *Lyons v. Am. Tobacco Co.*, No. Civ.A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997).

### (2) Mid Atlantic Is Shielded By The Sealed-Container Statute

20. Plaintiff has no possibility of success on any of her claims against Mid Atlantic because it is shielded from liability by Maryland's sealed-container statute. This statute provides a complete defense "to an action against a seller of a product for . . . personal injury allegedly caused by the defective design or manufacture of a product if the seller establishes that: (1) The product was acquired and then sold or leased by the seller in a sealed container or in an unaltered form; (2) The seller had no knowledge of the defect; (3) The seller in the performance of the duties he performed or while the product was in his possession could not have discovered the defect while exercising reasonable care; (4) The seller did not manufacture, produce, design, or designate the specifications for the product which conduct was the proximate and substantial cause of the claimant's injury; and (5) The seller did not alter, modify, assemble, or mishandle the product while in the seller's possession in a manner which was the proximate and substantial cause of the claimant's injury." *See* Md. Code Ann., Cts. & Jud. Proc. § 5-405(b). The sealed-container statute instructs that a seller "cannot be held responsible under Maryland law for a product defect it had no hand in creating and of which it had no knowledge or reason to suspect." *See Quirk v. Home Depot U.S.A.*, No. JFM-05-810, 2005 U.S. Dist. LEXIS 33148, at *6 (D. Md. Dec. 15, 2005); *Liesener v. Weslo, Inc.*, 775 F. Supp. 857, 859 (D. Md. 1991) ("The clear purpose

of [the sealed-container defense] is to make the chickens of a poor design come home to roost with the manufacturer, not the retailer.").

### (3) Plaintiff's Claims Against Mid Atlantic are Preempted and Contradictory to Her Allegations Against the Biomet Defendants

21. Plaintiff's claims are based on an alleged failure to provide adequate warnings about the Biomet Device. As independent contractor sales-representatives, Mid Atlantic could not have affected the warnings that accompanied the Biomet Device without violating federal law. It is therefore impossible for Plaintiff to state a claim against Mid Atlantic based on theories alleging a failure to provide adequate warnings about the Biomet Device. *See PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2582 (2011) (holding that state law is preempted where it is "not lawful under federal law . . . to do what state law required"); *see also In re Fosamax (Alendronate Sodium) Products Liab. Litig.*, MDL No. 2243 JAP-LHG, 2012 WL 181411, at *3 (D.N.J. Jan. 17, 2012) ("As a distributor of Fosamax, Watson has no power to change Fosamax labeling."); *Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011 WL 6379298, at *1 (Mass. Super. Oct. 5, 2011) (applying *Mensing* to pharmaceutical distributors, who are also unable to modify FDA-approved warning label). For this reason, courts have rejected imposing liability on intermediaries like Mid Atlantic for failure to warn of the risk of a prescribed drug or medical device.

22. The allegations that Mid Atlantic was aware of the defects allegedly associated with the Biomet Device are particularly deficient because the wholly conclusory claims are undermined and contradicted by allegations that the Biomet Defendants' concealed and misrepresented the same information. *See, e.g.,* Complaint ¶¶ 134, 165; *see also In re Phenylpropanolamine Prods. Liab. Litig. ("In re PPA")*, No. MDL 1407, C02-423R, 2002 WL 34418423, at *3 (W.D. Wash. Nov. 27, 2012)

(allegations that "manufacturer defendants concealed material facts regarding PPA through product packaging, labeling, advertising, promotional campaigns and materials, and other methods . . . directly undermines and contradicts the idea that [the resident retail defendant] had knowledge or reason to know of alleged defects."); *Baisden v. Bayer Corp.*, 275 F. Supp. 2d 759 (S.D. W. Va. 2003) (physician fraudulently joined where plaintiff alleged manufacturer concealed and misrepresented facts regarding drug, yet also asserted that doctor knew or should have known of same risks in spite of manufacturer's misrepresentations). The allegations of the Biomet Defendants' purported concealment and misrepresentation of the alleged risks associated the Biomet Device belie any inference that the Mid Atlantic, who relied on the Biomet Defendants to provide them with all such information, had knowledge of that which was allegedly concealed. *See* Shoop Declaration ¶ 13-14.

### (4)   Plaintiff Cannot Establish Causes of Action Sounding in Negligence or Strict Liability.

23.   Plaintiff has no possibility of success on her negligence, strict liability and misrepresentation claims against Mid Atlantic for the reason that Mid Atlantic did not owe any independent duty to her. Plaintiff asserts that Mid Atlantic had a duty and failed to "provide reasonable compete and accurate information to Plaintiff, her orthopedic surgeon, and the orthopedic community regarding Plaintiff's Magnum System." (*See* Compl., Ex. 1 at ¶¶ 121, 134.) This allegation makes no sense since neither Mid Atlantic nor Brett Shoop had anything to do with the marketing, advertising, or any labeling of the Biomet Device. (*See* Shoop Declaration, Ex. 2 at ¶ 13 ("Mid Atlantic did not have, and has never had, any involvement with the development or drafting of language used in any of the package inserts or other written materials for any Biomet products, including the Magnum Device allegedly at issue in this case."))

24. A distributor can only be found liable for known dangers of the product it distributes. *See Frericks v. General Motors Corp.*, 274 Md. 288, 305 (1975) ("an allegation that a manufacturer was negligent in the design of an automobile may state a valid cause of action in negligence without the necessity of a specific allegation that the manufacturer knew or should have known of the defect. But the dealer is in an entirely different position. The dealer who had nothing to do with the design of the car cannot be presumed to know of the defective design."); Restatement (Second) of Torts § 402 (indicating that a seller of a product manufactured by a third person "who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the [product] because of his failure to discover the danger by an inspection or test of the [product] before selling it"); *see also Vandelune v. 4b Elevator Components Unlimited*, 148 F.3d 943, 947 (8th Cir. 1998); *McLaurin v. East Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 601 (E.D.N.C. 2009); *Curry v. Sile Distributors*, 727 F. Supp. 1052, 1054 (N.D. Miss. 1990); *Richardson v. Michelin North America, Inc.*, 1998 WL 135804, at *5 (W.D.N.Y. Mar. 18, 1998). This is particularly relevant here, as Mid Atlantic "does not have, and never has had, any personal knowledge of or any reason to believe that the Magnum Device hip replacement product allegedly implanted in the plaintiff had a manufacturing, design or other defect." (*See* Shoop Declaration, Ex. 2 at ¶ 14.) Otherwise, every individual who had any role in the transportation or sale of any product would potentially be liable for negligence any time an individual was injured using it. Such an approach would result in limitless liability for millions of Americans who work in any capacity in which they ship, distribute, or sell goods. Accordingly, our legal system limits the duty of care to the actual manufacturer of a product. *See Lovelace v. Astra Trading Corp.*, 439 F. Supp. 753 (S.D. Miss. 1977) ("Where the wholesaler or distributor purchases an article from a reputable and reliable manufacturer . . . [and] sells

the article – exactly as it came from the manufacturer – to a customer in the regular course of business, no duty devolves on the wholesaler or retailer[.]"). For this reason, there is no possibility that Plaintiff would prevail on a negligence claim against the Mid Atlantic defendants.

25. Plaintiff's negligent failure to warn and misrepresentation claims also fail because they are not alleged with any particularity. Both causes of action focus on allegations of negligent misrepresentation, alleging that Mid Atlantic failed to disclose the alleged dangerous risks and that as a result Plaintiff was damaged by these omissions. (*See* Compl., Ex. 1 at ¶¶ 124-128; 164-169). As such, Plaintiff's negligence claims must be plead with particularity. *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) ("The requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud."). Plaintiff, however, does not point to any specific advertising or marketing representation that was allegedly false, or that she or her doctor relied on any such alleged representation. *In re Medimmune, Inc., Sec. Litig.*, 873 F. Supp. 953 (D. Md. 1995) ("As with the common law fraud count, failure to plead actual reliance element is fatal to the negligent misrepresentation count[.]").

(5) **Plaintiff Cannot Establish An MCPA Violation**

26. There is no possibility that Plaintiff could prevail on her claim that Mid Atlantic "used deception, misrepresentation and omission to convince Plaintiff's orthopedic surgeon" to "purchase the components at issue []and implant them in Plaintiff" in violation of the Maryland Consumer Protection Act. *See* Compl., Ex. 1, ¶ 160. This claim is doomed to fail because: (1) Plaintiff does not identify a single, material fact that was deceptively made to, or withheld from, her or her doctor by Mid Atlantic; and (2) Plaintiff fails to allege that she or her surgeon relied on that statement or omission.

27.   In order to state a claim under the MCPA, a plaintiff must allege that the defendant engaged in a misrepresentation. *See* Md. Com. Law § 13-301(9) (defining unfair or deceptive trade practices as the "misrepresentation" or "knowing concealment" of a material fact in connection with the promotion or sale of a consumer good). As with other fraud-based claims, the MCPA also requires proof of reliance. *See, e.g., Lloyd v. Gen. Motors Corp.*, 266 F.R.D. 98, 111 (D. Md. 2010) (finding that unfair-and-deceptive-trade-practices claim under the MCPA "require[d] plaintiffs to prove reliance"); *Philip Morris, Inc. v. Angeletti*, 752 A.2d 200, 235 (Md. 2000) ("Reliance by consumers would also seem to be a necessary precondition to awarding restitution or damages pursuant to the [MCPA]"); *Luskin's Inc. v. Consumer Protection Div.*, 726 A.2d 702, 727 (Md. 1999) (finding that "[t]here is a reliance element" for MCPA claims); *Consumer Protection Div. v. Outdoor World Corp.*, 603 A.2d 1376, 1384 (Md. App. 1992) (indicating that damages "may not be ordered" for an alleged violation of the MCPA "in the absence of some evidence that the individual purchaser was deceived by and relied upon the offending communication").

28.   Plaintiff fails to plead these essential elements of her MCPA claim against Mid Atlantic. As an initial matter, Plaintiff does not identify a single statement that Mid Atlantic allegedly made to her or her orthopedic surgeon regarding the safety and efficacy of the Biomet Device. Plaintiff also fails to allege what material facts Mid Atlantic knowingly concealed. Nor does she plead that she or her surgeon relied on any particular statement or omission from Mid Atlantic. For these reasons, there is no possibility that Plaintiff can recover against the Mid Atlantic defendants on her MCPA claim.[1]

---

[1]   This is particularly true because Plaintiff's MCPA claim must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Smart v. Decision One Mortg. Co., LLC*, No. 10-cv-00320-AW, 2011 U.S. Dist. LEXIS 22902, at *5 (D. Md. Mar. 7, 2011) ("The prohibitions of the [MCPA] . . . sound in fraud, which means that the heightened pleading requirements of Rule 9(b) apply."). As set forth above, Plaintiff's complaint fails to allege *any* facts about Mid Atlantic's supposed misrepresentations – let alone to do so with the particularity required by Rule 9(b). For this reason too, Plaintiff's MCPA claim against Mid Atlantic is doomed to fail.

B.   **Amount In Controversy**

29.   Plaintiff in this action claims that she has suffered "significant pain, metal wear, loss of enjoyment of life, and limitation of daily activities" and "expects to continue suffering such injuries in the future." (*See* Compl., Ex. 1 at ¶ 112.) Plaintiff also alleges that she "was caused to incur medical expenses, and expects to incur additional medical expenses in the future" and "experienced emotional trauma and distress, and is likely to experiences in the future." (*See* Compl., Ex. 1 at ¶¶ 113-114.) Plaintiff seeks compensatory damages in excess of $75,000. (*See* Compl., Ex. 1 Pray for Relief, p. 27.) Accordingly, the $75,000 jurisdictional threshold is satisfied. *See Synagro-WWT, Inc. v. Louisa County*, No. 3:01CV00060, 2001 U.S. Dist. LEXIS 10974, at *3-4 (W.D. Va. July 17, 2001) ("[I]t is generally acknowledged that the amount claimed in good faith by the plaintiff controls jurisdiction.").

II.   **REMOVING DEFENDANTS HAVE SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL.**

30.   The Biomet Defendants were served with Plaintiff's Complaint on April 23, 2014 and first received a copy of the initial pleading within the last 30 days. Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

31.   The Circuit Court for Calvert County is located within the District of Maryland. *See* 28 U.S.C. § 1441(a).

32.   None of the Biomet entities is a citizen of the State of Maryland, the State where this action was brought. *See* 28 U.S.C. § 1441(b).

33.   Defendants Biomet, Inc., Biomet Orthopedics, LLC, Biomet U.S. Reconstruction, LLC, and Biomet Manufacturing, LLC consent to removal of this action.

34.   While removal based on traditional diversity jurisdiction generally requires consent of all defendants, it is well settled that only properly joined defendants need to consent in removal. *See*

*Gephardt v. Mortgage Consultants, Inc.*, No. JFM-10-1537, 2010 U.S. Dist. LEXIS 115799 (D. Md. Oct. 29, 2010) (holding that diversity jurisdiction existed because in-state defendant who had never consented to removal was fraudulently joined); *Fleming v. United Teacher Assocs. Ins. Co.*, 250 F. Supp. 2d 658, 663 (S.D. W. Va. 2003) ("application of [the consent] requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists") (internal quotations omitted). Here, Mid Atlantic and Brett Shoop are fraudulently joined with Plaintiff's claims against the Biomet Defendants. Therefore, Mid Atlantic and Brett Shoop need not consent to removal.

35. No previous application has been made for the relief requested herein.

36. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served upon removing defendant, which papers include the complaint, are attached collectively as Exhibit 3.

37. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiff and a copy is being filed with the Clerk of the Circuit Court for Calvert County, Maryland.

WHEREFORE, removing Defendants respectfully remove this action from the Circuit Court for Calvert County, in the State of Maryland, bearing C14-000423 to this Court.

Respectfully submitted,

*/s/ James A. Frederick*
James A. Frederick (Bar No. 23506)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street – 20th Floor
Baltimore, Maryland 21202
jaf@gdldlaw.com
ssmith@gdldlaw.com
(410) 783-4000 (telephone)
(410) 783-4040 (fax)

_____
Shayon T. Smith (Bar No. 27190)
GOODELL, DEVRIES, LEECH & DANN, LLP
One South Street – 20th Floor
Baltimore, Maryland  21202
jaf@gdldlaw.com
ssmith@gdldlaw.com
(410) 783-4000 (telephone)
(410) 783-4040 (fax)

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of May 2014, a copy of the foregoing was served via first-class mail, postage prepaid, on:

Christopher H. Mitchell
STEIN MITCHELL MUSE & CIPOLLONE, LLP
1100 Connecticut Ave., NW, Suite 1100
Washington, DC 20036

Altom M. Maglio
Ilyas Sayeg
MAGLIO CHRISTOPHER & TOALE, PA
1605 Main Street, Suite 710
Sarasota, FL 34236

Brian Franciskato
NASH 7 FRANCISKATO LAW FIRM
2300 Main Street
Kansas City, MO 64108

*Attorneys for Plaintiff*

_____
James A. Frederick

4830-7918-2107, v. 1