IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANNA LAUGHLIN,
  *Plaintiff*,

v.

BIOMET INC., *et al.*,
  *Defendants.*

Civil Action No. ELH-14-1645

**MEMORANDUM OPINION**

In this product liability suit, plaintiff Anna Laughlin sued defendants Biomet Orthopedics, LLC; Biomet Manufacturing, Inc.; Biomet Inc.; and Biomet U.S. Reconstruction, LLC (collectively, "Biomet"), alleging defects with her hip replacement, a Biomet M2a Magnum Metal-on-Metal Hip System (the "Magnum"). ECF 2 ("Complaint").[1] In particular, Ms. Laughlin alleges that the Magnum's metal-on-metal design caused the device to corrode, releasing metallic debris into the bloodstream that killed surrounding tissue and bone. Further, she asserts that Biomet marketed the Magnum as safe, despite knowing that it was defective.

Ms. Laughlin lodges claims exclusively under Maryland law. These include claims of strict liability, negligence, breach of express and implied warranties, and misrepresentation. Jurisdiction is founded on diversity of citizenship under 28 U.S.C. § 1332. *See* ECF 1 ("Notice of Removal").[2]

---

[1] On December 13, 2019, Ms. Laughlin voluntarily dismissed her claims against defendants Mid Atlantic Medical, LLC and Brett Shoop. *See* ECF 58.

[2] Plaintiff filed suit on April 9, 2014, in the Circuit Court for Calvert County. ECF 2. Biomet removed the case to this Court on May 20, 2104. ECF 1 ("Notice of Removal"). The case was initially assigned to Judge Peter Messitte, but has been reassigned to me.

Ms. Laughlin's case was among many filed against Biomet. On October 2, 2012, the Joint Panel on Multidistrict Litigation ("JPML") consolidated all cases involving Biomet's Magnum into a Multi-District Litigation action ("MDL") for coordinated pretrial proceedings. *See In re: Biomet M2A Magnum Hip Implant Prods. Liab. Litig.*, 896 F. Supp. 2d 1339, 1340 (J.P.M.L. 2012). The MDL was assigned to Judge Robert Miller, Jr. of the United States District Court for the Northern District of Indiana. *Id.* Ms. Laughlin's case was transferred to the MDL on October 10, 2014. ECF 23.

After extensive pretrial proceedings, this case was remanded to this District on December 28, 2018, as part of the second remand group. MDL-2391, Dkt. No. 3741; ELH-14-1645, ECF 24.[3] In the transfer order, Judge Miller explained that of the approximately 3,000 cases that were part of the MDL, 90% had settled as part of a master settlement agreement reached in 2014. *See* MDL-2391, Dkt. No. 3738 at 2-3, 6; *see also* MDL-2391, Dkt. No. 1317 (Master Settlement Agreement). Accordingly, the remaining cases were sent to their proper districts for trial proceedings. MDL-2391, Dkt. No. 3738 at 13.

Now pending is Ms. Laughlin's motion, pursuant to Fed. R. Civ. P. 42(a), to join the consolidated action of plaintiffs John Harris and Sidney Kandel. ECF 60.[4] The motion is supported by a memorandum of law. ECF 60-1 (collectively, the "Motion"). Biomet opposes the

---

[3] At the time of the filing of this Memorandum Opinion, four other lawsuits are pending against Biomet in this District. *See Harris v. Biomet Orthopedics, LLC*, ELH-18-3924 (D. Md.); *Kandel v. Biomet Orthopedics, LLC*, ELH-18-3926 (D. Md.); *McCoy v. Biomet Orthopedics, LLC*, ELH-12-1436 (D. Md.); *Oswald v. Biomet Orthopedics, LLC*, ELH-19-607 (D. Md.).

The cases of *Fowler v. Biomet Orthopedics, LLC*, ELH-19-2931 (D. Md.); *Soustek v. Biomet Mfg. Corp.*, ELH-15-1890 (D. Md.), *Ringley v. Biomet, Inc.*, ELH-17-747 (D. Md.); and *Harbold v. Biomet Orthopedics, LLC*, ELH-18-3925 (D. Md.), have settled.

[4] The cases of Stephen Harbold and Paulette Ringley were once part of this consolidated action. But, as noted above, their cases have since settled.

Motion (ECF 65) and has submitted five exhibits. ECF 65-1 to ECF 65-5. Plaintiff has not replied, and time to do so has expired. *See* Local Rule 105(2)(a).

No hearing is necessary to resolve the Motion. *See* Local Rule 105(6). For the reasons that follow, I shall grant the Motion.

## I. Factual and Procedural Background

### A. Biomet's Magnum

The hip joint connects the thigh bone (the femur) to the pelvis. ELH-18-3924, ECF 7, ¶ 9. It operates like a ball and socket: the femoral head, a ball-like structure that sits at the top of the femur bone, rotates within the cupped surface of the pelvis, or acetabulum. *Id.* In a healthy hip, the femoral head and acetabulum are cushioned and lubricated by cartilage and fluid. *Id.*

A total hip implant replaces the body's natural joint with an artificial one. *Id.* ¶ 10; ELH-14-1645, ECF 2, ¶ 21. Generally, a hip implant consists of four parts, as depicted in the diagram that follows: a (1) femoral stem; (2) femoral head; (3) plastic (polyethylene) liner; and (4) acetabular shell. *Id.* ¶ 22.[5]



---

[5] The diagram was taken from the complaint of another Biomet suit. *See McCoy v. Biomet Orthopedics, LLC*, ELH-12-1436, ECF 1 at 5 (D. Md.).

During the operation, the surgeon first hollows out the patient's femur bone and inserts the femoral stem. Next, the surgeon attaches the femoral head to the stem. Then, the surgeon inserts the liner and acetabular shell to separate the metal femoral head from the acetabulum. *See id.* ¶¶ 22-23.

Biomet's Magnum has only three parts: a stem, femoral head, and shell. *See id.* ¶¶ 63, 66. The Magnum's femoral head and acetabular shell are both made out of metal. *Id.* This kind of hip implant is known as a metal-on-metal (MoM) system. *Id.* ¶ 35.

According to plaintiffs, the grinding of the Magnum's metal "ball" against the metal "socket" causes tiny fragments of chromium and cobalt to slough off into the bloodstream. *Id.* ¶ 12. This metal debris kills soft tissue and bone near the hip, "prompt[ing] the body to react by rejecting the hip implant." *Id.* Symptoms include pain and severe inflammation. *Id.* This corrosion also causes the Magnum to loosen, dislocate, and fracture. *Id.* As a result of these complications, patients implanted with a Magnum often require "revision" surgery, whereby the Magnum is removed and replaced with a new hip implant. *See, e.g.*, ELH-14-1645, ECF 2, ¶¶ 109-110.

In general, the plaintiffs allege that the Magnum was not sufficiently tested, and that the United States Food and Drug Administration ("FDA") never approved the device as being safe and effective. ELH-18-3924, ECF 7, ¶ 13. Nonetheless, Biomet allegedly claimed that the Magnum was safe and durable. *Id.* ¶ 19.

Moreover, plaintiffs contend that Biomet knew that the Magnum was defective. ELH-18-3924, ECF 1, ¶¶ 15-16. Shortly after releasing the Magnum, Biomet received "hundreds of complaints" from patients, who reported having adverse reactions to the Magnum, with many

undergoing revision surgeries. *Id.* ¶ 17. However, despite knowing about issues with the Magnum, Biomet neither pulled the device from the market nor warned the public. *Id.* ¶ 18.

Instead, Biomet aggressively advertised the Magnum as superior to other hip implants. *Id.* Biomet allegedly claimed, falsely: "'The M2a-Magnum™ Large Metal Articulation System offers optimal joint mechanic restoration and ultra low-wear rates *in vivo*'" and "'Many studies conducted over the last several decades have shown no definitive correlation of negative health issues to ion levels exhibited from metal-on-metal implants.'" *Id.* ¶ 20 (emphasis in original). And, Biomet published marketing brochures targeting doctors, touting the safety and durability of MoM devices. *Id.* ¶ 19; *see also* ELH-14-1645, ECF 2, ¶ 73 (alleging that Biomet advertised the Magnum has having a three-year survivorship rate of over 99%). Thus, plaintiffs allege that Biomet failed to warn patients and healthcare providers of the serious health risks associated with the Magnum.

### B. Plaintiffs' Medical Histories

#### 1. Mr. Harris

Mr. Harris suffers from severe osteoarthritis in both hips, hip bursitis, and degenerative disc disease. ELH-18-3924, ECF 199-12 ("Ex. I," Harris Medical Records) at 4-5, 11; ECF 199-18 ("Ex. O," Harris Deposition) at 9-10. Mr. Harris underwent a left hip replacement at Frederick Memorial Hospital in Frederick, Maryland on September 15, 2008. Ex. I at 6. Dr. Robert Fisher implanted a Magnum in Mr. Harris's left hip. *Id*. At the time of the surgery, Mr. Harris was 67 years old. *Id*. On October 28, 2009, Mr. Harris had a revision surgery on his left hip during which he received a new liner and femoral head. *Id.* at 21-22. That operation was performed by Dr. Christopher Cannova at Suburban Hospital in Bethesda, Maryland. *Id*. Before receiving a

Magnum hip replacement, Mr. Harris had a right hip replacement that has not been revised. Ex. I at 2-5.

### 2. Mr. Kandel

Mr. Kandel has a number of medical conditions, including osteoporosis. ELH-18-3924, ECF 199-11 ("Ex. H," Kandel Medical Records) at 10. On December 1, 2008, Dr. Robert Fisher implanted a Magnum device in Mr. Kandel's left hip. *Id*. at 2-3. The surgery occurred at Frederick Memorial Hospital in Frederick, Maryland. *Id.* Mr. Kandel was 60 years old at the time of this hip replacement. *Id.* at 2. The Magnum device in Mr. Kandel's right hip was revised by Dr. Henry Boucher on November 19, 2014, at Union Memorial Hospital in Baltimore, Maryland. *Id.* at 16-17. Dr. Boucher implanted a new device made of materials different from those in the Magnum. *Id.* at 18.

### 3. Ms. Laughlin

Ms. Laughlin's medical history includes Osteoarthritis, Degenerative Joint Disease, Fibromyalgia, and Herniated Disc. ELH-14-1645, ECF 65-4 ("Ex. D," Laughlin Medical Records) at 9-11. On May 26, 2010, Dr. Bryan R. Herron implanted a Magnum device in Ms. Laughlin's right hip. *Id.* at 7. At the time, she was 53 years old. *Id.* The operation occurred at Calvert Memorial Hospital in Prince Frederick, Maryland. *Id.* Ms. Laughlin underwent a revision surgery on April 14, 2014, performed by Dr. Marc Hungerford at Mercy Medical Center in Baltimore. *Id.* at 29.

### C. Procedural History

As noted, on October 2, 2012, the JPML created MDL No. 2391 in the Northern District of Indiana, and Judge Miller was assigned to conduct pretrial proceedings for all lawsuits alleging defects with Biomet's Magnum. *See In re: Biomet*, 896 F. Supp. 2d at 1341. At the time, Biomet

opposed centralization, arguing that "individualized, plaintiff-specific issues will predominate among the actions." *Id.* at 1339-40. But, the JPML rejected that contention. It observed that "'almost all injury litigation involves questions of causation that are case- and plaintiff-specific. Such differences have not been an impediment to centralization in the past.'" *Id.* at 1340 (quoting *In re Wright Med. Tech., Inc., Conserve Hip Implant Prods. Liab. Litig.*, 844 F. Supp. 2d 1371, 1372 (J.P.M.L. 2012)). And, it found that the "central issues in these cases may well be whether a common defect has led to the injuries alleged." *Id.* Because the lawsuits "share factual questions concerning design, manufacture, marketing and performance of Biomet's M2A Magnum system," the JPML concluded that "centralization will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation[.]" *Id.*

"To eliminate delays associated with the transfer cases from other federal district courts to [the MDL] and to promote judicial efficiency," Judge Miller permitted any plaintiff whose case would have been subject to transfer to MDL No. 2391 to file his or her case directly in the Northern District of Indiana. MDL-2391, Dkt. No. 3096. However, direct filing was "contingent on the understanding that upon completion of all pretrial proceedings . . . th[e] court w[ould], pursuant to 28 U.S.C. § 1404(a), transfer the case to a federal district of proper venue, as defined by 28 U.S.C. § 1391, unless the parties expressly agree to an alternate venue." *Id.*

Plaintiffs separately filed suit against Biomet. Ms. Laughlin filed suit on April 9, 2014, in the Circuit Court for Calvert County, and her case was removed to this Court on May 20, 2104. ELH-14-1645, ECF 1. Mr. Harris filed his Complaint in the Northern District of Indiana on October 23, 2014, which he amended shortly thereafter. ELH-18-3924, ECF 7. And, Mr. Kandel filed his suit in the Northern District of Indiana on March 18, 2016. ELH-18-3925, ECF 1; ELH-18-3926, ECF 1.

As noted, plaintiffs lodge claims against Biomet under Maryland law. The complaints of Mr. Harris and Mr. Kandel contain the same eight counts: "Strict Liability: Manufacturing Defect" (Count I); "Strict Liability: Failure to Warn" (Count II); negligence (Count III); negligent design (Count IV); fraudulent concealment (Count V); breach of implied warranties (Count VI); breach of express warranties (Count VII); and punitive damages (Count VIII). *See, e.g.*, ELH-18-3924, ECF 7 at 8-19. Ms. Laughlin's Complaint also asserts eight counts, as follows: "Negligence" (Count One); "Negligent Failure to Warn" (Count Two); "Strict Liability Failure to Warn" (Count Three); "Strict Liability" (Count Four); breach of implied warranties (Count Five); breach of express warranties (Count Six); "Violation of Consumer Protection Act," Md. Code, § 13-301, *et seq.* of the Commercial Law Article (Count Seven); and misrepresentation (Count Eight). ELH-14-1645, ECF 2 at 22-28.

As indicated, Judge Miller transferred the *Kandel*, and *Harris* matters to the District of Maryland on December 12, 2018. MDL-2391, Dkt. No. 3738; *see* ELH-18-3924, ECF 181; ELH-18-3925, ECF 93; ELH-18-3926, ECF 93. And, as noted, the *Laughlin* matter was remanded to this District on December 28, 2018, as part of the second remand group. MDL-2391, Dkt. No. 3741; ELH-14-1645, ECF 24. In the transfer order, Judge Miller explained that of the approximately 3,000 cases that were part of the MDL, 90% had settled as part of a master settlement agreement arrived at in 2014. *See* MDL-2391, Dkt. No. 3738 at 2-3, 6; *see also* MDL-2391, Dkt. No. 1317 (Master Settlement Agreement). Accordingly, the remaining cases were being sent to their proper districts for case-specific pretrial matters and for trial. MDL-2391, Dkt. No. 3738 at 13. Further, Judge Miller observed, *id.*:

> Any case might present its own atypical need, but for the most part, here is what will be left to do after remand: (1) additional, non-duplicative, case-specific depositions; (2) disclosure of case-specific experts, service of case-specific expert reports, and case-specific expert depositions; (3) any motions addressing the

testimony of case-specific experts; (4) any motions (or, perhaps, trial objections) directed to the recorded trial testimony of the plaintiffs' generic experts; (5) any other motions addressing the testimony of generic or case-specific experts; and (6) any summary judgment motions.

On June 14, 2019, Mr. Harris, Mr. Kandel, Mr. Harbold, and Ms. Ringley each filed an identical motion to consolidate their cases for trial. *See, e.g.*, *Harris v. Biomet Orthopedics, LLC*, ELH-18-3924, ECF 196. JoAnna McCoy and Joseph Oswald also sought to consolidate their cases for trial. *See McCoy v. Biomet Orthopedics, LLC*, ELH-12-1436, ECF 54. Separately, Ms. Laughlin submitted a one-page motion on September 13, 2019, asking the Court to consolidate her case with other pending Biomet cases. ELH-14-1645, ECF 45. But Ms. Laughlin did not specify which particular group of plaintiffs she sought to join, nor did she address the rationale for joinder of the cases.

I denied the motion to consolidate filed by Ms. McCoy and Mr. Oswald. *See* ELH-12-1436, ECF 79; ECF 80. But, I granted the motion filed by Mr. Harris, Mr. Kandel, Mr. Harbold, and Ms. Ringley, by Memorandum Opinion and Order of November 18, 2019 (the "consolidated *Harris* matter"). ELH-18-3429, ECF 201, ECF 202. The Court explained that consolidation was appropriate because the plaintiffs' cases shared questions of law and fact, consolidation would not prejudice defendants, and it served the interests of judicial economy and convenience.

In contrast, I denied Ms. Laughlin's motion, without prejudice, in a Memorandum and Order of November 19, 2019. ELH-14-1645, ECF 56, ECF 57. In particular, the Court observed that it was not clear whether Ms. Laughlin's case could be joined to other pending cases, given that she had sued distributors of the Magnum device, in addition to Biomet. ECF 56 at 3-4.

On December 13, 2019, Ms. Laughlin voluntarily dismissed the Magnum distributors from the suit. ECF 58. Thereafter, on December 20, 2019, she again moved to consolidate her case with the consolidated *Harris* matter. ECF 60.

9

On March 17, 2020, as the Court was completing this Memorandum Opinion, Ms. Laughlin and Biomet filed a joint motion to stay this case pending participation in a settlement program. ECF 67. I granted the request through September 8, 2020. ECF 68. Because this ruling may be relevant to settlement proceedings, I have proceeded to issue it, despite the stay.

## II. Discussion

### A. Rule 42

Rule 42(a) of the Federal Rules of Civil Procedure governs the consolidation of cases for trial. It provides:

> (a) CONSOLIDATION. If actions before the court involve a common question of law or fact, the court may:
> 
> (1) join for hearing or trial any or all matters at issue in the actions;
> 
> (2) consolidate the actions; or
> 
> (3) issue any other orders to avoid unnecessary cost or delay.
> 
> (b) SEPARATE TRIALS. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

The Rule "permits, but does not mandate, consolidation of cases that involve a common question of law or fact." *CX Reinsurance Co. v. Leader Realty Co.*, JKB-15-3054, 2016 WL 6696050, at *1 (D. Md. Nov. 15, 2016). The district court is vested with "broad discretion to decide whether consolidation under Rule 42(a) would be desirable . . . ." 9A C. WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2383 (3d ed. 2019); *see also, e.g.*, *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 959 (4th Cir. 1999) (noting the discretion of the district court under Rule 42(a)).

In making its determination, a district court must "weigh the saving of time and effort that consolidation under Rule 42(a) would produce against any inconvenience, delay, or expense that

it would cause for the litigants and the trial judge." WRIGHT & MILLER, § 2383. The Fourth Circuit has said:

> The critical question for the district court in the final analysis was whether the specific risks of prejudice and possible confusion were overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives.

*Arnold v. E. Air Lines, Inc.*, 681 F.2d 186, 193 (4th Cir. 1982), *rev'd on other grounds,* 712 F.2d 899 (4th Cir. 1983) (en banc); *see also Campbell v. Bos. Sci. Corp.*, 882 F.3d 70, 74 (4th Cir. 2018) (applying the *Arnold* factors); *CX Reinsurance Co.*, 2016 WL 6696050 at *1-2; *CSX Transp., Inc. v. Alban Waste*, *LLC*, JKB-13-1770, 2014 WL 1340041, at *2 (D. Md. Apr. 2, 2014); *Dring v. Faust*, WDQ-12-2344, 2013 WL 657638, at *1 (D. Md. Feb. 21, 2013).

Notably, "the mere fact that a common question is present, and that consolidation therefore is permissible under Rule 42(a), does not mean that the trial court judge must order consolidation.[]" WRIGHT & MILLER, § 2383. Moreover, a court need not consolidate for trial, but may instead consolidate cases "in their pretrial stage" as "a desirable administrative technique[.]" *Id*. § 2382; *see also Rishell v. Computer Scis. Corp.*, No. 1:13-CV-931, 2014 WL 11515835, at *1 (E.D. Va. Apr. 4, 2014) ("[I]ncluded within [a district court's] discretion is consolidation for discovery and pre-trial purposes.").

### B. Analysis
#### 1. Common questions of fact and law

Ms. Laughlin argues that consolidation is appropriate because her case presents the same questions of fact and law as does the consolidated *Harris* matter. ECF 60-1 at 6-8. The Motion points out many factual similarities among the plaintiffs. *Id.* And, Ms. Laughlin stresses that the "main allegations of the lawsuits are the same: that the Magnum was defectively designed, that

11

Biomet failed to warn against the risk of using it, and that such misconduct harmed the plaintiffs." *Id.* at 6. Thus, Ms. Laughlin contends that it would be needlessly duplicative to require her to litigate her claims separately from the consolidated *Harris* matter. *Id.*

In response, Biomet avers that a consolidated trial involving four plaintiffs will result in "[e]xtraordinary juror confusion," to the detriment of Biomet. ECF 65 at 1. According to Biomet, Ms. Laughlin "has a different medical history (e.g., pre-existing conditions, past surgeries, etc.), different set of attributes (e.g., age, gender), and different implant and revision experiences (e.g., symptoms, surgical findings, etc.), which make her case distinct from the other plaintiffs already consolidated." *Id.* at 2-3. As a result, Biomet asserts that individual issues concerning causation predominate over common factual questions. *Id.* at 3.

The case of *Campbell v. Boston Scientific Corporation*, 882 F.3d 70 (4th Cir. 2018), is instructive. There, the Fourth Circuit reviewed the propriety of consolidating for trial four medical device products liability cases. The plaintiffs in *Campbell* were four women who had been implanted with transvaginal mesh, a medical device manufactured by Boston Scientific Corporation ("BSC") to treat severe stress urinary incontinence. *Id.* at 73. Plaintiffs separately filed suit against BSC, alleging that the device's defects were responsible for the post-implantation complications they experienced. *Id.* They sought compensatory and punitive damages "based on theories of negligence and strict liability for both design defects and failure to warn." *Id.*

The plaintiffs' cases were transferred to an MDL in the Southern District of West Virginia, which consolidated their cases with seven others for trial. After six cases were dismissed and one was removed from the consolidated action, BSC moved to separate the four remaining cases for trial. The district court denied the motion. *Id.* Following an eleven-day trial, the jury returned verdicts in favor of plaintiffs, awarding each plaintiff $250,000 in past compensatory damages,

$1,000,000 in punitive damages, and future compensatory damages ranging from $3 million to $4 million. *Id.* BSC appealed, arguing, *inter alia*, that the district court abused its discretion by consolidating the cases under Rule 42(a) because individual issues predominated.

The Fourth Circuit rejected this challenge. *Id.* at 76. It reasoned, *id.*:

> The district court . . . . first identified the many common questions of law and fact across the trials: The four plaintiffs were each diagnosed with stress urinary incontinence before being implanted with Obtryx devices made by BSC. Each plaintiff alleged that she had experienced similar complications from the Obtryx that required additional medical treatment. Each plaintiff received her Obtryx implant in West Virginia and asserted the same design-defect and failure-to-warn claims under West Virginia law. Because of these many similarities among the cases, the plaintiffs shared expert witnesses and relied on much of the same evidence from BSC documents. BSC asserted in all four cases both that the Obtryx was not defective and that the Obtryx's directions for use provided sufficient warnings. These many similarities certainly provided the "common question[s] of law or fact" required by Rule 42(a). They also make clear that separate trials would have been largely repetitive, and thus would have implicated the burdens, delays, and expense that *Arnold* noted help justify consolidation.

As in *Campbell*, plaintiffs' lawsuits share common questions of fact. Plaintiffs are all citizens of Maryland. ELH-14-1645, ECF 2, ¶ 4; 18-3924, ECF 7, ¶ 1; ELH-18-3925, ECF 1, ¶ 1; ELH-18-3926, ECF 1, ¶ 1. They were all implanted with Biomet's Magnum hip implant. ELH-14-1645, ECF 2, ¶ 106; ELH-18-3924, ECF 7, ¶ 22; ELH-18-3925, ECF 1, ¶ 22; ELH-18-3926, ECF 1, ¶ 22. Their implantations occurred in the same two-year window. *See* Ex. L at 1 (Mr. Kandel and Mr. Harris were implanted in 2008); Ex. D at 6 (Ms. Laughlin was implanted in 2010). And, their surgeries occurred in Maryland. Ex. I at 8; Ex. F-1 at 3; Ex. H at 10; Ex. D at 6. Indeed, the same surgeon implanted the Magnum in Mr. Harris and Mr. Kandel. Ex. I at 8; Ex. H at 2.

Notably, plaintiffs also complain of the same injuries. Two of the four plaintiffs tested as having high levels of cobalt and chromium in their bloodstream. Ex. L at 2; Ex. D at 11-13. And, they all allege that they experienced pain and discomfort in the hip that was replaced with a Magnum. ELH-14-1645, ECF 2, ¶ 109; ELH-18-3924, ECF 7, ¶ 42; ELH-18-3925, ECF 1, ¶ 43;

13

ELH-18-3926, ECF 1, ¶ 43. Moreover, all four plaintiffs underwent a revision surgery in the hip implanted with the Magnum. Ex. I at 21-22; Ex. F-1 at 6; Ex. H at 18; Ex. D at 28. These commonalities are significant. *See Campbell*, 88 F.3d at 74; *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No. 3:11-MD-2244-K, 2016 WL 10719395 at *2 (N.D. Tex. Jan. 8, 2016) (consolidating five cases for bellwether trial against a hip implant device manufacturer; observing that plaintiffs "experienced similar implantation procedures, and . . . experienced similar complications").

Certainly, plaintiffs are not carbon copies. Indeed, Biomet describes Ms. Laughlin's "unique" medical history in painstaking detail. *See* ELH-14-1645, ECF 65 at 3-4. These differences include Ms. Laughlin's preoperative diagnoses, post-operative activity levels, and her lifestyle and background, such as "allergies or personal sensitivities." *See id.*

However, the existence of facts unique to each plaintiff does not preclude consolidation. Were it otherwise, consolidation would never occur in products liability litigation. *See Blount v. Bos. Sci. Corp.*, No. 1:19-CV-0578 AWI SAB, 2019 WL 394387, at *4 (E.D. Cal. Aug. 21, 2019) (consolidating four transvaginal mesh cases; "[W]hile Boston identified various differences [among the plaintiffs], including differing medical histories, it does not actually explain how those differences actually affect causation in this case. For example, simply listing different medical conditions and identifying them as 'noteworthy' or 'significant' does not actually show how they are significant to the issue of causation."); *McClellan v. I-Flow Corp.*, Civ. No. 07-1309-AA, 2010 WL 11595942 at *3 (D. Or. July 23, 2010) ("If the court accepted defendants' arguments [that plaintiffs' differences demanded separate trials], consolidation would be precluded in almost any circumstance."); *In re Montor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004 (CDL), 2010 WL 797273, at *3 (M.D. Ga. Mar. 3, 2010) (consolidating four cases in a

medical device products liability action; opining that "[w]hile each of Plaintiffs' specific medical conditions may be different, those differences and their significance can be explained to a jury and easily understood").

Moreover, the factual distinctions that Biomet highlights pertain to the issue of causation. ELH-14-1645, ECF 65 at 3. But, as the JPML observed when consolidating Biomet lawsuits, "'almost all injury litigation involves questions of causation that are case- and plaintiff-specific.'" *In re: Biomet*, 896 F. Supp. 2d at 1341 (citation omitted). For that reason, factual differences bearing on causation do not necessarily preclude consolidation in medical device product liability actions. *See Eghnayem v. Bos. Sci. Corp.*, 873 F.3d 1304, 1314 (11th Cir. 2017) (affirming consolidation of four transvaginal mesh suits; "Although each plaintiff's proof of causation was necessarily different, generally differences in causation are not enough, standing alone, to bar consolidation of products liability claims.").

Furthermore, plaintiffs' lawsuits present common questions of law. All four plaintiffs allege that the Magnum was defective and that Biomet, despite knowing this, advertised the Magnum's safety and efficacy. And, plaintiffs pursue claims against Biomet only under Maryland law. On a more granular level, Ms. Laughlin's claims significantly overlap with the causes of action asserted in the consolidated *Harris* matter; all plaintiffs assert claims of strict product liability, negligence, and breach of implied and express warranties. *Compare* ELH-14-1645, ECF 21-29 *with* ELH-18-3925, ECF 1 at 8-18 *and* ELH-18-3926, ECF 1 at 8-19. Thus, I am satisfied that plaintiffs' lawsuits present common legal questions.

Accordingly, because Ms. Laughlin's claims share common issues of fact and law with the plaintiffs in the consolidated *Harris* matter, consolidation is possible under the express terms of Rule 42(a).

2. Prejudice

Ms. Laughlin maintains that consolidation will not prejudice Biomet. ELH-14-1645, ECF 60 at 8. That is so, she argues, because the Court can capably prevent juror confusion through the use of limiting instructions. *Id.* In response, Biomet asserts that consolidation will cause it to suffer unfair prejudice because the "sheer volume of evidence" will cause jurors to "conflate the testimony and evidence related to each plaintiff's claims." ECF 65 at 3. In particular, Biomet posits that it will be prejudiced by "spillover evidence," *i.e.*, evidence that is admissible as to some but not other plaintiffs. ECF 65 at 4. According to Biomet, limiting instructions will "not adequately safeguard against the potential for spillover evidence" because jurors "have poor comprehension and application of limiting instructions." *Id.* at 5; *see generally* ELH-14-1645, ECF 65-1 at 46-84 (Dr. Penrod Affidavit).

Again, I turn to *Campbell*, 882 F.3d 70, for guidance. On appeal, BSC sought to vacate the verdict on the ground that it was "prejudiced at trial by the admission of evidence in the consolidated trial that was admissible as to only some of the plaintiffs." *Id.* at 75. In particular, BSC took issue with the introduction of documents that shed light on what BSC knew about its product's safety, which were created after some of the plaintiffs had received their implants. *Id.*

The Fourth Circuit acknowledged that "consolidation is not appropriate if it would deny a party a fair trial." *Id.* But, it stated: "The results here were not purchased at the cost of fairness to any party." *Id.* at 76. Spillover evidence did not taint the verdict, the Court explained, because "the district court endeavored throughout the trial to limit any potential jury confusion or prejudice resulting from the consolidation." *Id.* at 74. The Court said, *id.* at 74-75:

> At the outset of trial, the district court instructed the jury that the trial concerned four separate claims and informed them that they must treat each as "as if each have been tried by itself." J.A. 1705–06. During the trial, BSC had the opportunity to address each plaintiff's claims independently, and in fact pursued a comparative

16

negligence defense as to one plaintiff that it did not pursue as to the other plaintiffs. Following trial and prior to jury deliberations, the district court emphasized that the jurors were not to "even consider that more than one claim was brought" in weighing the evidence and that they must consider each case separately. J.A. 1084. To promote independent review of each case, the district court made use of special interrogatories on separate verdict forms for each plaintiff.

Characterizing the district court as having "bent over backwards to ensure that distinct questions of fact and law could be appropriately developed at trial and distinguished by the jury," the Fourth Circuit concluded that "[i]t would be inconceivable to hold that the trial court abused its discretion in these circumstances." *Id.* at 76.

The risk of prejudice to Biomet due to spillover evidence does not appear to be significant, and it does not outweigh the obvious benefits of consolidation. To be sure, should plaintiffs' suits reach trial, there will be separate fact testimony for each plaintiff, and there may be separate expert testimony. But, like the district court in *Campbell*, the Court can utilize cautionary instructions to cabin the jury's consideration of the evidence and prevent juror confusion.

Biomet's insistence that separate trials are necessary because limiting instructions are generally ineffectual is not persuasive. "The jury system is premised on the idea that rationality and careful regard for the court's instructions will confine and exclude jurors' raw emotions." *CSX Trans., Inc. v. Hensley*, 556 U.S. 838, 841 (2009); *Francis v. Franklin*, 471 U.S. 307, 325 n.9 (1985) ("Absent such extraordinary situations, however, we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions."); *Opper v. United States,* 348 U.S. 84, 95 (1954) ("To say that the jury might have been confused amounts to nothing more than an unfounded speculation that the jurors disregarded clear instructions of the court in arriving at their verdict. Our theory of trial relies upon the ability of a jury to follow instructions.").

Biomet speculates that jurors will disregard the Court's instructions, to the detriment of Biomet. There is no actual foundation for this concern. In sum, Biomet's cries of prejudice do not foreclose consolidation.

### 3. Judicial economy and convenience

Ms. Laughlin argues that consolidation furthers the interests of judicial economy and convenience. She maintains that it will expedite discovery, streamline motions practice, and avoid duplicative testimony. ELH-14-1645, ECF 60-1 at 9. Biomet counters that the burdens of a consolidated trial on the parties, witnesses, and jurors far outweigh any putative time or cost savings. ECF 65 at 6.

The same arguments that Biomet presses here were rejected in *Campbell*, 882 F.3d 70. In affirming the district court's decision to consolidate, the *Campbell* Court articulated the advantages of aggregation. It said, *id.* at 76:

> Ultimately, it is clear that the district court was well within its discretion in consolidating these four cases for trial. To hold otherwise would be to sacrifice the substantial savings of time and money that consolidation offers. Both plaintiffs and defendants benefit from lessened litigation costs and the reduced need for expert testimony. Witnesses benefit from reduced demands on their time by limiting the need for them to provide repetitive testimony. The community as a whole benefits from reduced demands on its resources, including reduced demand for jurors. The judicial system benefits from the freedom consolidation affords judges to conscientiously resolve other pending cases.

Consolidating Ms. Laughlin's action with the consolidated *Harris* matter will serve the interests of judicial economy, efficiency, and convenience. In short, it will benefit the parties by avoiding duplicative motions practice and reduce costs by avoiding multiple trials and the need for duplicative expert testimony; benefit the witnesses by minimizing the inconvenience of testifying in multiple trials; and it will benefit the Court by expeditiously resolving several cases in one trial.

### III. Conclusion

Because I find that Ms. Laughlin's suit shares common questions of fact and law with the plaintiffs in the consolidated *Harris* matter and, because I am satisfied that consolidation will not prejudice Biomet, I shall GRANT the Motion. ELH-14-1645, ECF 60. Accordingly, Ms. Laughlin's cases shall be consolidated with the cases pending in ELH-18-3429.

An Order follows, consistent with this Memorandum Opinion.

Date: March 18, 2020 /s/
Ellen L. Hollander
United States District Judge